```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  TAMMY FORTUNE,

                   Plaintiff,                  MEMORANDUM & ORDER
                                                20-CV-1245(EK)
        -against-

  COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Tammy Fortune, proceeding *pro se*, seeks judicial review of the Social Security Administration's decision to deny her claims for disability insurance benefits and supplemental security income.  The Commissioner has moved for judgment on the pleadings.  For the following reasons, I grant the motion.

## I. Background

**A.  Procedural History**

        Plaintiff applied for disability insurance benefits on October 5, 2016 alleging disability beginning September 28, 2016.  The agency initially denied her claim.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") in October 2018; the ALJ concluded that Plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income.  The Appeals Council

denied Plaintiff's request for review of the ALJ's decision, rendering it final. This appeal followed.

**B.    The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, the ALJ evaluates (at step two) whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the ALJ identifies a severe impairment, he or she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

2

Here, the ALJ concluded (at step one) that Plaintiff engaged in substantial gainful activity from her alleged onset date of September 28, 2016 until October 1, 2018, and was therefore ineligible for SSA benefits during this period. Thus, he went on to consider only the period from October 1, 2018 to January 16, 2019 (the date of his decision) at step two.

He determined that Plaintiff had several medically determinable impairments during this period, but that none was "severe" within the meaning of 20 C.F.R. § 404.1520(c). These included: asymptomatic HIV, asthma, mild scoliosis of the lumbosacral spine, osteoarthritis of the right knee, intermittent vertigo, and inflammation and corneal scar of the right eye. Given the absence of a severe impairment, he concluded the sequential analysis at step two.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v.*

3

*Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g). Nevertheless, "*pro se* litigants are entitled to a liberal construction of their pleadings and, therefore, their complaints should be read to raise the strongest arguments that they suggest." *Polanco v. Comm'r of Soc. Sec.*, 304 F. Supp. 3d 345, 356 (S.D.N.Y. 2018) (cleaned up).

### III. Discussion

Plaintiff submitted letters to this Court (but not the ALJ below) stating that she could no longer work due to her health. She described her pain and difficulty performing daily tasks. *See* ECF Nos. 14, 17, 19, 23, 24. Plaintiff does not explicitly contest the ALJ's finding that she engaged in substantial gainful activity ("SGA") for the part of the claims period that he held she did. Nevertheless, Plaintiff appears to contend that she is entitled to benefits for the full period of her alleged disability, including the period in which the ALJ found that she had engaged in SGA. Therefore, given Plaintiff's *pro se* status, I review the ALJ's determination with regard to this time period as well.

**A.    Step One**

At step one, the ALJ properly determined that Plaintiff engaged in SGA from her alleged onset date of

4

September 28, 2016 until October 1, 2018. Tr. 26-27. Plaintiff testified that during this period she served as a home health aide, *id.* at 26, 77-78, 81-82, and her earnings exceeded the threshold for SGA.[1] *Id.* at 190-91. Exceeding this threshold, however, only gives rise to a presumption that Plaintiff engaged in SGA. *See Lopez v. Colvin*, No. 15-CV-5258, 2016 WL 805521, at *8 (S.D.N.Y. Mar. 1, 2016), *report and recommendation adopted*, No. 15-CV-5258, 2017 WL 979059 (S.D.N.Y. Mar. 13, 2017). A court must still independently evaluate the activity itself.

"Gainful" activity means activity that a claimant does "for pay or profit." 20 C.F.R. § 404.1572(b). Plaintiff's work as a home health aide satisfies this element, given her compensation. "Substantial" work activity involves "significant physical or mental activities." 20 C.F.R. § 404.1572(a). Plaintiff's work as a home health aide was substantial. She acknowledged, for example, that the work involved "strenuous physical demands." Tr. 275. Thus, the earliest twelve-month period during which Plaintiff did not engage in SGA began on October 1, 2018. *See* 42 U.S.C. § 423(d)(1); 20 C.F.R. §§ 404.1571-1575 (defining and describing substantial gainful activity). Therefore, the ALJ proceeded to consider the time

---

[1] *See* Program Operations Manual System DI 10501.015B, Tables of SGA Earnings Guidelines for Nonblind Individuals (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015).

period from then until January 16, 2019 in step two of the sequential analysis.

**B.   Step Two**

At step two, he concluded that Plaintiff's conditions did not meet the Social Security Administration's definition of severe, either together or separately.  To survive step two, a claimant must demonstrate that she has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment, she is not disabled regardless of any other factors or considerations.  *Id*.  It is Plaintiff's burden to establish that an alleged impairment is severe.  *See id.* at § 404.1512(a)(1).

In her letters on appeal, Plaintiff refers to limitations in connection with her back injury, eye irritation, vertigo, and asthma.  The ALJ appropriately determined that Plaintiff did not meet her burden as to any of these alleged impairments.

1.   <u>Back Pain</u>

Plaintiff filled out a pain questionnaire supplied by a state disability agency in November 2016, attesting that she had back and leg pain since 2012 and that this pain had become disabling.  Tr. 207-16; *see also id.* at 76-78, 170, 276.

6

Plaintiff also wrote in a work history report she filled out and submitted to the Social Security Administration that she previously had to stop working because of her back injury.  *Id.* at 226.  Her full medical record, however, does not support Plaintiff's subjective complaints.

  The ALJ focused on the treatment notes of Dr. Cecilia Yoon (one of her treating physicians), among other things.  As the ALJ observed, these notes indicate that Plaintiff's condition improved with medication and treatment to the point where Plaintiff ultimately showed "no positive physical examination findings."  Tr. 29, 674-77.

  Plaintiff also told the consultative examiner, Dr. Yevsikova, that she had experienced back pain since 2005.  *Id.* at 342.  But the ALJ concluded that the medical record evidence did not support a finding that Plaintiff's back pain constituted a severe impairment.  *Id.* at 28-29.  For example, X-rays in the record revealed only mild scoliosis of the lumbosacral spine. *Id.* at 28, 347.  Moreover, Plaintiff exhibited normal gait and stance, walked on her heels and toes without difficulty, used no assistive device, did not require assistance changing for the examination or getting on and off the examination table, and arose from her chair without difficulty.  *Id.* at 28-29, 343. Plaintiff also denied any changes in her activities since her back pain started.  *Id.* at 211.

7

Indeed, the record revealed that Plaintiff was able to care for children, go for walks, use public transportation, socialize with friends, attend church services, cook, clean, do laundry, shop, and perform personal care independently. *Id.* at 208-211, 343. These activities undermined her claim of total disability. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's daily activities undermined disability allegations). Ultimately, while Plaintiff's back impairment may have caused her pain, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Here, the ALJ's conclusion that Plaintiff's back impairment was not disabling was supported by substantial evidence.

2. <u>Eye Irritation</u>

In addition to her allegations of back pain, the ALJ considered Plaintiff's testimony that she stopped working, in part, due to irritation of her right eye. In assessing Plaintiff's eye irritation, he considered notes from various treating physicians. These indicated some corneal scarring but did not reveal evidence of vision loss. *Id.* at 29, 78, 557-562, 644-48. Moreover, treatment notes from a March 2018 emergency department visit for her right eye irritation showed that Plaintiff had recently stolen a bottle of Tetracaine, and that her symptoms were potentially exacerbated by inappropriate use

8

of the medication. *Id.* at 557-59. Plaintiff stated that she was still able to, among other things, sew, read, and watch television, *id.* at 208-11, 216, suggesting that her eye impairment was not disabling. *See Blackwood v. Comm'r of Soc. Sec.*, No. 07-CV-388, 2008 WL 2704352, at *10 (N.D.N.Y. July 2, 2008) (ability to read and watch television supports finding of no disability despite allegation of eye irritation and glaucoma). Moreover, Dr. Yoon found that, despite her eye impairment, Plaintiff could avoid hazards in the workplace, read small and ordinary print, view a computer screen, and distinguish the shape and color of small objects. Tr. 537. Considering, among other things, the absence of vision loss, the impact of Plaintiff's use of medication without a prescription, and Dr. Yoon's findings, the ALJ appropriately concluded that Plaintiff's eye impairment was not severe. *See Butler v. Comm'r of Soc. Sec.,* No. 12-CV-9179, 2014 WL 595678, at *1 (S.D.N.Y. Feb. 10, 2014) (finding eye irritation alone not disabling).

   3.  <u>Vertigo</u>

In evaluating Plaintiff's "intermittent episodes" of vertigo, the ALJ observed that the record was "unremarkable" and did not suggest disability. *Id.* at 29. Substantial evidence supported this conclusion. Although an MRI showed signs of "mild nonspecific fronto-parietal subcortical white matter disease," the condition resulted in no ongoing acute symptoms.

*Id.* Further, Plaintiff's vertigo had stabilized and improved with medication prescribed for use as needed. *Id.*; *see, e.g., Phillip v. Saul*, No. 19-CV-5459, 2020 WL 5096740, at *19 (S.D.N.Y. Aug. 28, 2020) (Davison, M.J.) (ALJ properly considered improvement in plaintiff's symptoms of vertigo with medication).

4. Asthma

Next, the ALJ appropriately concluded that Plaintiff's asthma was not severe. Tr. 28-30. The record, as described by the ALJ, revealed no "exacerbations" (or attacks) and no ER visits, or hospitalizations. Plaintiff used her nebulizer and inhaler only sparingly. *Id.* at 28-29, 342, 674, 683-84, 687, 709, 713, 738. During medical examinations, Plaintiff's chest and lungs were clear, and she showed normal diaphragmatic motion. *Id.* at 29, 344, 661, 685, 711, 741; *see, e.g., Cruz Montas v. Comm'r of Soc. Sec.*, No. 18-CV-00169, 2019 WL 1417219, at *4 (S.D.N.Y. Mar. 29, 2019) (Netburn, M.J.) (fact that plaintiff's lungs were clear cut against conclusion that asthma was severe).

5. HIV

In evaluating Plaintiff's HIV, the ALJ cited substantial evidence that her condition remained stable and asymptomatic with regular monitoring and antiretroviral treatment. Tr. 28-29, 538, 687. He properly categorized it as

10

not severe.  *See, e.g.*, *Heath v. Colvin*, No. 14-CV-223, 2015 WL 1959710, at *4, 7 (N.D.N.Y. Apr. 29, 2015) (affirming ALJ's finding that generally asymptomatic HIV did not significantly limit plaintiff at step two).

6.   Right Knee Impairment

The ALJ properly concluded that Plaintiff's right knee impairment was not severe.  Tr. 28-29.  As he explained, Plaintiff acknowledged during the consultative examination that her knee pain had improved with medication.  *Id.* at 28, 342.  She also displayed full lower extremity range of motion; no muscle atrophy, normal reflexes and sensory findings; and exhibited no instability, swelling, or effusion.  *Id.* at 29, 344.

In sum, the ALJ properly determined that none of Plaintiff's impairments was severe.  This decision was supported by substantial evidence and was not the product of legal error.

**C.   Later-Submitted Evidence**

In Plaintiff's August 25, 2020 letter to this Court, she included additional treatment records, many of which postdated the ALJ's decision.  ECF No. 14.  A case may be remanded based on additional evidence first submitted to the district court if the plaintiff can show that the evidence is material and that there exists "good cause for the failure to incorporate such evidence into the record in a prior

11

proceeding." 42 U.S.C. § 405(g). To carry this burden, a plaintiff must show that "(1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the proffered evidence is material . . . and (3) good cause exists for his failure to present the evidence earlier." *Mulrain v. Commissioner of Social Sec.*, 431 F. App'x 38, 39 (2d Cir. 2011).

The later-submitted records that relate to the time period at issue before the ALJ are largely duplicative of the existing record. *See, e.g.*, *Di Paolo v. Barnhart*, No. 03-CV-0175, 2005 WL 503934, at *3 (E.D.N.Y. Jan. 26, 2005). Nor has Plaintiff shown good cause for not having provided these records to the ALJ and Appeals Council; indeed, she provides no explanation at all. *See Lisa v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991) ("Good cause exists where evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." (cleaned up)).

The later-submitted records that *postdate* the relevant time period are not properly considered here. "[E]vidence demonstrating a worsening of [the plaintiff's] condition after [the relevant] date is of little value." *Vilardi v. Astrue*, 447 F. App'x 271, 272 (2d Cir. 2012); *see also Camacho v. Comm'r*, No. 04-CV-2006, 2005 WL 3333468 (E.D.N.Y. Dec. 6, 2005) (declining to remand for consideration of new evidence

12

indicating that plaintiff's HIV infection worsened after the ALJ decision). This is not to say that Plaintiff could not receive a favorable determination if she were to reapply for Social Security benefits in light of the alleged worsening of her condition. *See, e.g., Delvalle v. Colvin*, 14-CV-1779, 2015 WL 1381536, at *3 (S.D.N.Y. March 25, 2015) ("[B]ased on her allegedly deteriorating condition, [plaintiff] is welcome to reapply for Social Security disability benefits."); *Ryles v. Sec'y of Health & Human Servs.*, 526 F. Supp. 1141, 1143 (E.D.N.Y. 1981) ("[I]f a claimant's physical condition should deteriorate after a claim has been denied, the proper procedure is to reapply for disability benefits based upon the facts as they then exist."). Nevertheless, on this record, the ALJ did not err in his determination.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings. The Clerk of Court is respectfully requested to enter judgment and close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose

of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

       SO ORDERED.


                                                 /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge


Dated:    December 29, 2021
           Brooklyn, New York